IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| In the Matter of, | § | |
| | § | |
| JANE TYLER, | § | No. 545, 2018 |
| A person with a disability. | § | |
| | § | Court Below: |
| | § | Court of Chancery |
| | § | of the State of Delaware |
| | § | |
| | § | C.M. No. 08925-N-MZ |

Submitted: April 3, 2018
Decided: April 17, 2019

Before **STRINE**, Chief Justice; **VALIHURA**, and **SEITZ**, Justices.

## **O R D E R**

(1)     The parents and legal guardians of Jane Tyler ("Appellants")[1] appeal the decision of the Court of Chancery and request that this Court reverse and remand this matter with instruction.  Jane is a twenty-six-year-old woman with severe autism, which renders her unable to speak, care for herself, or make significant decisions.  Jane currently lives in a group home under contract with the Delaware Division of Developmental Disabilities Services ("DDDS").  In October of 2017, certain members of Jane's group home staff alleged that Mr. Tyler may have sexually abused Jane on more than one occasion.  The matter was referred to the New Castle County Police Department and several State agencies.

---

[1] This Court assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).  To avoid confusion, this Memorandum refers to Jane Tyler as "Jane," and to Jane's mother and father as Ms. Tyler and Mr. Tyler, respectively.  No disrespect or familiarity is intended.

(2)     Although no agency arrested or pressed charges against Mr. Tyler, the Court of Chancery limited his visitation rights to the common areas of Jane's home in an interim *ex parte* order dated October 18, 2017 ("Interim Order"), and ordered an investigation by the Guardianship Monitoring Program ("GMP"). The GMP filed the report of its investigation ("GMP Report") under seal on January 11, 2018 and recommended continuing the visitation restrictions. The Court of Chancery agreed and issued its Order for Supervised Visitation on January 26, 2018. The Appellants filed a Petition for Relief challenging the visitation restrictions and the continued confidentiality of the GMP Report. The Master in Chancery denied these requests. Appellants then filed exceptions to the Master's order, which the Court of Chancery denied. On appeal, the Appellants argue, among other claims, that the Court of Chancery denied them due process by maintaining the GMP Report under seal pursuant to Court of Chancery Rule 180-D ("Rule 180-D"), and that the court improperly invoked 24 *Del. C.* § 1768 ("Section 1768") to maintain the GMP Report under seal. Appellants, however, no longer challenge the visitation restrictions.

(3)     After reviewing the record, we conclude that the Court of Chancery did not err in relying upon Rule 180-D for the continued sealing of the GMP Report. Further, we reject Appellants' contention that the Vice Chancellor overruled the Appellants' exceptions without conducting a meaningful review. Accordingly, except to the extent it may have relied upon Section 1768, an issue which we need not address, we AFFIRM the Court of Chancery's June 12, 2018 Master's Final Order and its September 26, 2018 Order Overruling Exceptions and Adopting Master's Report.

*Facts and Procedural History*

(4)     On May 18, 2011, the Court of Chancery appointed Appellants as Jane's co-guardians.  At that time, Appellants were represented by Kevin O'Brien ("O'Brien").  Since 2012, Jane has lived in a group home.  The Appellants have had disagreements with the group home staff since 2016, and, on several occasions, Mr. Tyler has had heated arguments concerning care issues with the group home's staff.  Appellants, who are Caucasian and Jewish, believe that some of the African-American and Muslim staff harbored racial and anti-Semitic animosity toward them.[2]  When the Appellants visit Jane together, their preference has been to visit in the family room "common area," but they would sometimes visit Jane in her room if she was unwilling to come out.

(5)     On October 18, 2017, DDDS filed a Motion for Supervised Visitation ("Motion").  DDDS served this Motion on O'Brien.  In its Motion, DDDS alleges that on October 12, 2017, NHS reported allegations that Mr. Tyler sexually abused Jane.  DDDS reported these sexual abuse allegations to the New Castle County Police Department, the Department of Health and Social Services Division of Long Term Care Residences Protection, and the Medicaid Fraud Control Unit of the Attorney General's Office.  The Court of Chancery ordered the GMP to investigate.  While these investigations were pending, DDDS sought an order from the Court of Chancery prohibiting Mr. Tyler from unsupervised visitation with Jane.

---

[2] Ms. Tyler has reported that the group home now has many new staffers who are "all very nice" and "a big improvement from some of the previous staff that are not around anymore."  Opening Br. at 11.

(6)     About forty-two minutes following the filing of the motion for supervised visitation, the Court of Chancery entered the Interim Order prohibiting Mr. Tyler from having unsupervised visits with Jane or removing Jane from the group home. The Interim Order provided that it could be reviewed upon a showing of good cause by Mr. Tyler or upon completion of all investigations of alleged sexual abuse.

(7)     On October 19, 2017, the Court of Chancery appointed the GMP to investigate the sexual abuse allegations, and, on November 1, 2017, the Court of Chancery entered a sealed order pertaining to the investigation ("November 1 Order").[3] The GMP filed its report under seal on January 11, 2018 and recommended continuing the restrictions limiting Mr. Tyler's visitation.[4] On January 26, 2018, the court ordered that Mr. Tyler's visitation was limited to the common area of the group home and that he could not visit Jane in her room. Citing Rule 180-D(c)(2), the Court's order sealed the GMP's report because "access by interested parties would be detrimental" to Jane.[5] This order was electronically served on O'Brien, Appellants' counsel in the guardianship proceedings.[6]

(8)     Appellants filed a Petition for Relief ("Petition for Relief") on April 24, 2018 challenging the visitation restrictions and denying the sexual abuse allegations against Mr.

---

[3] The sealed November 1 order does not appear in the record on appeal.

[4] The GMP Report does not appear in the record on appeal.

[5] App. to Opening Br. at A44.

[6] Mr. Tyler also engaged John Deckers to represent him in the criminal investigation of the alleged abuse. Apparently, Deckers thought that O'Brien would represent the Appellants concerning the Court of Chancery proceedings, while O'Brien thought the same about Deckers. In its June 12, 2018 Final Report, the Master referred to the failure of these attorneys to communicate. *Id.* at A104.

Tyler. They requested, in the alternative, that their counsel be granted access to the November 1 Order and the GMP Report.[7] In GMP's response, it argued for keeping the GMP Report under seal pursuant to Rule 180-D. DDDS did not take a position on the use of Rule 180-D, but it asserted that the materials it provided to GMP were "peer review materials" protected from disclosure under Section 1768. On June 12, 2018, the Master issued her report ("Final Report") denying the Appellants' petition, citing to Rule 180-D.[8] In addition, the Court stated that "[t]he GMP report was filed under seal and, as noted in the DDDS petition, contains confidential information protected from disclosure by 24 *Del. C.* §1768."[9] Accordingly, the Court concluded that "access by [Mr. Tyler] to [the November 1 Order and GMP Report], and the statutorily protected DDDS information referred to in the GMP report, would be detrimental to [Jane]."[10] We agree with DDDS that a fair reading of this aspect of the Court's order is that the Court was not relying upon Section 1768 primarily as a basis to seal the documents, although it noted that some of the underlying documents provided to the GMP and referenced in the reports may be protected by Section 1768. Also, the Master reviewed the merits of Mr. Tyler's petition even though he "failed to participate in these proceedings earlier and did not avail himself of the opportunity to take exception to the January 26 order."[11]

---

[7] *Id.* at A53.

[8] *Id.* at A103.

[9] *Id*. at A103–04.

[10] *Id.* at 104.

[11] *Id.*

5

(9) On June 14, 2018, Appellants filed a Notice of Exceptions to the Final Report. On June 25, 2018, Appellants requested that the adjudication of exceptions to the Final Report be stayed due to a significant deterioration in Jane's health. An emergency care conference was scheduled for June 27, 2018. The Court of Chancery granted the stay under the conditions that Appellants provide an update within seven days of the conference and that the GMP be present at the conference and submit a supplemental report.

(10) On July 9, 2018, Appellants submitted the required status update about the emergency care conference and informed the Court that Jane's deterioration was largely due to an issue with her antipsychotic medication, and her well-being generally improved after a medication adjustment. In the status update, Appellants also requested that the Court require the GMP and DDDS to "follow up" on a video that allegedly had been taken without Jane's consent.[12] Two days later, the GMP submitted its supplemental report from the emergency care conference ("GMP Supplemental Report"). GMP's Supplemental Report concluded that the visitation restrictions should be continued, as "[i]t is the opinion of this author that the Court [of Chancery] should continue to err on the side of caution in regards to protecting the ward moving forward."[13]

(11) On July 12, 2018 (the "Supplemental Order"), the Master ruled that Appellants' requests that the Court appoint the GMP to investigate the video taken of Jane

---

[12] *Id.* at A112. According to Appellants' status update, they learned at the emergency care conference that a group home staff member may have taken a video of Jane banging her head against the wall on April 3, 2018. *Id.*

[13] *Id.* at A123.

6

and to appoint the GMP to meet with Appellants to resolve these issues did not further the mission of the GMP and were not in furtherance of Jane's well-being.[14]

(12) On July 26, 2018, Appellants filed their Opening Brief in Support of their Exceptions to the Final Report and Supplemental Order. In that brief, Appellants did not challenge the portion of the Final Report that pertains to the restrictions placed upon Mr. Tyler's visitation rights, as set forth in the original January 26, 2018 order. The Court of Chancery overruled Appellants' exceptions and adopted the Final Report and July 12 Supplemental Order on September 26, 2018.[15] On October 24, 2018, Appellants filed their Notice of Appeal with this Court.

*Issues on Appeal*

(13) Appellants raise three primary issues on appeal: (1) whether the Master committed error by failing to act in Jane's best interest; (2) whether the Master committed error by denying the Petition; and (3) whether the Vice Chancellor committed error by summarily overruling the exceptions without a "meaningful review" and without providing a sufficient explanation of her ruling. Although Appellant's Opening Brief actually raises a host of issues, we focus on the only one that merits serious attention, namely, whether

---

[14] *Id.* at A117.

[15] *See id.* at A398 (Order Overruling Exceptions) ("A hearing on the exceptions is unnecessary. The court has conducted a *de novo* review of the rulings in the Report and the Supplement. The court agrees with the analysis conducted in the Report and Supplement. The exceptions to the Report and Supplement are overruled, and the Report and Supplement are adopted as decisions of this court.").

7

the GMP report can remain confidential, even though Appellants no longer challenge Mr. Tyler's visitation restrictions. We reject the remainder of the issues as meritless.

*Analysis*

(14)   The Appellants argue that the Court of Chancery erred by applying Section 1768 to this situation.   On appeal, DDDS stated that it took no position on whether the GMP Report could be kept under seal pursuant to Rule 180-D, and, in a footnote, reiterated its position that to the extent any material it provided to GMP constitutes peer review material, such material should not be disclosed.[16]   Further, DDDS contends that "[t]he November 1 order and January 11 GMP report were not withheld because they are protected by 24 *Del. C.* §1768, although the Court noted that documents provided by DDDS may contain statutorily protected information."[17]   They argued further that "Chancery Court Rule 180-D governs the overall confidentiality of documents from the GMP."[18]

(15)   As noted above, the Master relied primarily on Court of Chancery Rule 180-D as authority for maintaining the reports under seal. And although the Master also stated that "[t]he GMP report . . . as noted in the DDDS petition, contains confidential information protected from disclosure by 24 *Del. C.* § 1768," and that "access by [Mr. Tyler] to those

---

[16] DDDS Answering Br. at 25 n.63. DDDS cited to the "Department of Health and Social Services Policy Memorandum 46" in support of its contention that such materials "are prohibited from disclosure pursuant to 24 *Del. C.* § 1768." App. to Opening Br. at A96. No party included this memorandum in the record filed with this Court.

[17] DDDS Answering Br. at 25.

[18] *Id.* at 25–26.

8

documents, and the statutorily protected DDDS information referred to in the GMP report, would be detrimental to [Jane],"[19] we need not reach the Section 1768 issue if we conclude that Rule 180 provides an adequate basis for continued confidential treatment. We conclude that it does.

(16) The Appellants frame their challenge to the sealed status of the GMP Report under Rule 180-D primarily as a due process issue.[20] Although they make little attempt in their briefing to establish why they have a due process interest in the report, it appears they base that interest under the Fourteenth Amendment, which they claim establishes a fundamental right to make decisions concerning the care of their children.[21] Appellants do argue that if there were any truth to the allegations of abuse, then the Court "failed to act appropriately by examining the fitness of [Mr. Tyler] to remain as co-guardian."[22] They contend further that "[s]uch an examination would have included due process, the ability

---

[19] App. to Opening Br. at A103–04 (Master's Final Order). The Master did not elaborate as to how disclosure of the video to Mr. Tyler would harm Jane. In their Answering Briefs, GMP and DDDS alluded to the possibility that, because of possible actions by Mr. Tyler in response to the GMP Report, Jane could experience retaliation, or other possible care deficiencies. They also argue that providing a basis for the determination of harm or detriment could itself reveal the confidential information, thereby undercutting the policy behind keeping the GMP Report confidential.

[20] In their Opening Brief on appeal, Appellants state that they "acknowledge that Chancery Ct. R. 180-D empowers the Court to block access to the GMP report and other sealed documents upon a showing that access would be harmful or detrimental to [Jane], but not for the reasons given by the Master." Opening Br. at 32.

[21] U.S. Const. amend. XIV.

[22] Opening Br. at 16.

to cross-examine witnesses and examine evidence, which would have afforded [Mr. Tyler] the opportunity to clear his name."[23]  They claim "that fundamental right was denied."[24]

(17)   At the time of the events in question, Rule 180-D(c)(2) provided in relevant part:

> When the Court refers a case to the Guardianship Monitoring Program for review, the referral order shall specify the date on which a written report shall be filed.  Such report shall contain a detailed summary of the investigation conducted by the Guardianship Monitoring Program, any facts obtained through such investigation, any referral(s) made to another agency for further investigation, and any recommendation for immediate action by the Court. *Such report shall be available to all interested parties, unless the Guardianship Monitoring Program first obtains Court permission to seal all or a portion of the report upon a showing that access to the report by specific interested parties would be harmful or detrimental to the disabled person.*[25]

(18)   We assume, *arguendo*, that the Appellants have a cognizable due process interest in attempting to address any reputational harm arising from the allegations.  But even so, the weight of authority convinces us that here, Appellants' interests do not outweigh the State's interests in keeping reports of alleged abuse confidential.

(19)   In *Pennsylvania v. Ritchie*,[26] the United States Supreme Court recognized the important interests in protecting child-abuse information.  There, the Court held that the

---

[23] *Id.*

[24] *Id.*

[25] Ct. Ch. R. 180-D (2017) (emphasis added).  Effective July 1, 2018, Rule 180-D(c)(2) was amended to shift the burden of obtaining GMP reports to interested parties: "Reports of the Guardianship Monitoring Program are confidential and interested parties will not receive copies of the report except by approval of the Court."  *See* Rule 180-D 2018 Amendment Redline, https://courts.delaware.gov/rules/pdf/Chancery_AmendmentsRules175-178-A-180-180-C-80-DRedline.pdf.

[26] 480 U.S. 39 (1987).

defendant in a child sex abuse case was not entitled to have his counsel review confidential files prepared by the Pennsylvania Children and Youth Services. Rather, the Court held that:

> To allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the *Commonwealth's compelling interest in protecting its child-abuse information. If the CYS records were made available to defendants, even through counsel, it could have a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse.* Child abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim. A child's feelings of vulnerability and guilt and his or her unwillingness to come forward are particularly acute when the abuser is a parent. It therefore is essential that the child have a state-designated person to whom he may turn, and to do so with the assurance of confidentiality. *Relatives and neighbors who suspect abuse also will be more willing to come forward if they know that their identities will be protected. Recognizing this, the Commonwealth—like all other States—has made a commendable effort to assure victims and witnesses that they may speak to the CYS counselors without fear of general disclosure.*[27]

Delaware courts have since applied *Ritchie* to withhold confidential information from litigants and their attorneys.[28]

(20) Additionally, in *Smith v. New Jersey Division of Child Protection and Permanency*,[29] the United States Court of Appeals for the Third Circuit applied the

---

[27] *Id.* at 60–61 (emphasis added) (concluding that "[a]n *in camera* review by the trial court will serve [the Respondent's] interest without destroying the Commonwealth's need to protect the confidentiality of those involved in child-abuse investigations").

[28] *See Meeks v. State*, 1996 WL 637905, at *4 (Del. Oct. 25, 1996) (TABLE) (holding that a judge's *in camera* review of potentially exculpatory information from a confidential informant was sufficient, and that "the United States Supreme Court has repeatedly endorsed the use of *in camera* proceedings as a means of balancing the government's privilege to withhold disclosure of confidential information against the defendant's right to have access to all information that is relevant and helpful to a defense").

[29] 723 Fed. App'x 119 (3d Cir. 2018).

11

principles in *Ritchie* to deny a mother's request for confidential information. The mother, who had been accused of child abuse, sued the state for infringing on her Fifth and Fourteenth Amendment due process rights by failing to divulge confidential files on the allegation and the anonymous informant's identity.[30] The district court dismissed her claim, and, on appeal, the Third Circuit affirmed, holding that:

> To determine whether a parent's constitutionally protected rights are violated, we must balance the fundamental liberty interests of the family unit with the compelling interests of the state in protecting children from abuse. . . .
>
> In the context of civil actions, the importance of maintaining confidentiality has been cited as justifying protective orders that preclude plaintiffs from learning the identity of child abuse reporters. In this matter, Smith's asserted interest in pursuing a possible malicious abuse of process action against the anonymous reporter(s) is not sufficient to overcome the compelling interest in assuring that witnesses of suspected child abuse may report what they have observed without fear of disclosure and reprisal.[31]

(21)   Here, the Appellants seek confidential information that the State prepared for the purpose of investigating sexual abuse of a dependent adult with disabilities. Much like child abuse and confidential informant issues, the State has a compelling interest in keeping its internal reports under seal. Appellants have made colorable arguments about the extent to which an unsubstantiated allegation can persist to have an effect upon their visitation rights as well as their reputations. But had the Appellants desired, they could have sought a hearing and testimony from a representative of GMP under Rule 180-D—but they did

---

[30] *Id.* at 120.

[31] *Id.* at 122–23 (internal citations and quotations omitted).

12

not.[32]  The Appellants' due process interests do not require release of the GMP Report.  In sum, based upon the record before us, we conclude that the Court of Chancery did not err by invoking Rule 180-D to keep the GMP Report under seal.

*Conclusion*

(22)    We AFFIRM the Court of Chancery's June 12, 2018 Master's Final Order and its September 26, 2018 Order Overruling Exceptions and Adopting Master's Report.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice

---

[32] *See* Ct. Ch. R. 180-D(d) ("A representative of the Guardianship Monitoring Program shall be available upon request of the Court or any interested party to testify regarding the review or investigation conducted by the Guardianship Monitoring Program.").  We do not express a view as to whether, under such scenario, requiring redactions or some other accommodation might be appropriate if the Court deems appropriate.